John G. Balestriere
Jillian L. McNeil
**BALESTRIERE FARIELLO**
225 Broadway, Suite 2900
New York, NY 10007
Telephone:   (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestriere.net
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **THE HEMMERDINGER CORPORATION, d/b/a ATCO**,<br><br>     Plaintiff,<br><br>  - against -<br><br>**FRANK M. RUOCCO, JR., BORIS A. TOMICIC, WILLIAM S. McCAMBRIDGE, EARTH TECHNOLOGY, INC., and RECYCLE TECHNOLOGY, LLC,**<br><br>     Defendants. | Index No.:<br><br>**PLAINTIFF'S RICO CASE STATEMENT** |

Plaintiff hereby files its initial Racketeer Influenced and Corrupt Organizations Act ("RICO") case statement.  All party abbreviations and definitions included herein are defined in Plaintiff's complaint.

- Unless otherwise specified, every time that Ruocco is alleged to have committed an action, that action was committed both in his individual capacity, and on behalf of ETI.

- Unless otherwise specified, every time that Tomicic is alleged to have committed an action, that action was committed both in his individual capacity, on behalf of ETI, and at the behest of ETI president and owner Ruocco.

- Unless otherwise specified, every time that McCambridge is alleged to have committed an action, that action was committed both in his individual capacity, and on behalf of RecTec.

- Unless otherwise specified, every time that ETI is alleged to have committed an action, that action was committed in its capacity as a corporation, and at the behest of and with direction from Ruocco and Tomicic.

- Unless otherwise specified, every time that RecTec is alleged to have committed an action, that action was committed in its capacity as a corporation, and at the behest of and with direction from McCambridge.

1

## PLAINTIFF'S RICO CASE STATEMENT

1.    **State whether the alleged unlawful conduct is in violation of Title 18, United States Code, Sections 1962(a), (b), (c), and/or (d).  If you allege violations of more than one subsection of Section 1962, each must be treated or should be pleaded as a separate RICO claim.**

I.    **1962(c)**

A.    Defendants have acted in violation of 18 U.S.C. § 1962(c) to the detriment of Plaintiff.

II.    **1962(d)**

A.    Defendants have acted in violation of 18 U.S.C. § 1962(d) by conspiring to violate U.S.C. § 1962(c) to the detriment of Plaintiff.

2.    **List each defendant, and separately state the misconduct and basis of liability of each defendant.**

Ruocco, Tomicic, and ETI associated with McCambridge and RecTec to engage in a systematic and extensive series of illegal acts that form a pattern and practice of racketeering activity.  The Defendants associated to fraudulently inflate and to conspire to fraudulently inflate invoices to ETI customers, including Plaintiff ATCO.  These illegal acts include, but may not be limited to, predicate acts of mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343.  All five Defendant "persons," as defined by 18 U.S.C. § 1961(3), participate in, manage, and operate a pattern of racketeering activity which injured at least Plaintiff ATCO in its business and property.

I.    **Ruocco**

A.    **Defendant Ruocco**: Frank M. Ruocco, Jr. is an individual who is president and owner of ETI.  Ruocco is believed to reside in Chesire, Connecticut.  Ruocco is a person under 18 U.S.C. § 1961(3).

B.    **Misconduct of Ruocco**: Ruocco, as president and owner of ETI, a site development and environmental services company, coordinated and performed the fraudulent activity.  Ruocco marketed ETI services to customers.  After using ETI as the vehicle to obtain customers, Ruocco conspired to have ETI employee Tomicic funnel project bills through McCambridge's company RecTec.  At RecTec, customer invoices were inflated to levels far higher than the direct cost invoices—invoices for the actual costs of the services provided—of the services afforded by Ruocco, Tomicic, and ETI.  ETI's sub-contract with separate party Plaza, ATCO's general contractor for the Atlas Park project (the shopping center Plaintiff ATCO was constructing in Glendale, Queens), entitled ETI to no more than 15% of the direct costs in financial compensation in addition to the direct cost of ETI's excavation and soil remediation work.  The inflations which Ruocco, Tomicic, and ETI allowed McCambridge and RecTec to include added no additional benefit to the customers' projects and violated the sub-contract with Plaza.  Ruocco, along with Tomicic and McCambridge, shared in the profits resulting from RecTec's inflated bills.

3

**C.**     **Basis of Liability of Ruocco**: Ruocco participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least Plaintiff ATCO in its business and property.

**II.**     **Tomicic**

**A.**     **Defendant Tomicic**: Boris A. Tomicic was an ETI employee who was project manager of the ETI Project, which involved soil excavation and soil remediation work at Atlas Park, the shopping center Plaintiff ATCO was constructing in Glendale, Queens.  Tomicic is believed to reside in West Hartford, Connecticut.  Tomicic is a person under 18 U.S.C. § 1961(3).

**B.**     **Misconduct of Tomicic**:  Tomicic, as a project manager of ETI, influenced, advised, strategized, and aided Ruocco and McCambridge in coordinating and undertaking the fraudulent activity.  As an ETI project manager, Tomicic funneled project bills through RecTec, a company in which Ruocco and Tomicic secretly held equity and from which they shared profits.  At RecTec, customer invoices were inflated to levels far higher than the direct costs of the services provided by Ruocco, Tomicic, and ETI.  The inflations Ruocco, Tomicic, and ETI allowed McCambridge and RecTec to include added no additional benefit to the customers' projects.  Tomicic, along with Ruocco and McCambridge, shared in the profits resulting from RecTec's inflated bills.

4

When questioned by ATCO representative Mark Powers regarding the invoices from RecTec, Tomicic fraudulently used wire communications to justify RecTec's invoice inflations (for example, a memorandum sent by facsimile on August 3, 2005), as well as to create bogus competitive bids that made it seem as if RecTec had offered ETI transportation and disposal services for certain Polluted Materials (contaminated materials from the Atlas Park site that ETI was in charge of removing and disposing) at costs below those of other competitors (for example, a memorandum sent by facsimile on September 8, 2005).

C.    **Basis of Liability of Tomicic**: Tomicic participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least Plaintiff ATCO in its business and property.

Tomicic was found guilty of the felony of wire fraud on November 4, 2011.

III.    **McCambridge**

A.    **Defendant McCambridge**: William S. McCambridge is an individual who was the managing member and statutory agent of RecTec. McCambridge is believed to reside in Dudley, Massachusetts. McCambridge is a person under 18 U.S.C. § 1961(3).

B.    **Misconduct of McCambridge**: McCambridge was the manager of RecTec, a contaminated fuel disposal, soil disposal, and recycling company. As a manager of RecTec, McCambridge influenced, advised,

5

strategized, and aided Ruocco and Tomicic in coordinating and undertaking the fraudulent activity. As manager of RecTec, McCambridge conspired with Ruocco, Tomicic, and ETI to inflate invoices that Ruocco, Tomicic, and ETI would later bill to their customers. McCambridge knowingly inflated the invoices without him or his company adding any additional benefit whatsoever to the services provided to ETI's customers.

C.      **Basis of Liability of McCambridge**: McCambridge participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least Plaintiff ATCO in its business and property.

McCambridge pleaded guilty to a one-count Information charging him with conspiracy to commit wire fraud on July 7, 2009.

IV.    **ETI**

A.      **Defendant ETI**: Earth Technology, Inc., a site development and environmental services company, is located at 250 Sackett Point Road, North Haven, Connecticut 06473. ETI is a person under 18 U.S.C. § 1961(3).

B.      **Misconduct of ETI**: ETI provided the vehicle through which Ruocco and Tomicic were able to gather customers for the Enterprise. ETI provided legitimate soil excavation and soil remediation services. However, for at least customer ATCO, Ruocco and Tomicic then utilized

6

ETI to funnel invoices for bills related to the customers' projects through RecTec, a company that added no additional benefits to the projects. By funneling the ETI bills through RecTec, ETI was able to charge far higher than the direct costs plus 15% Compensation that it had agreed by sub-contract to charge for ATCO's Atlas Park project.

C.      **Basis of Liability of ETI**:   Ruocco and Tomicic used their managerial positions at ETI to participate and conspire to participate in, direct, and manage the predicate acts that form the pattern of racketeering activity which injured at least Plaintiff ATCO in its business and property.

V.      **RecTec**

A.      **Defendant RecTec**: Recycle Technology, LLC, a contaminated fuel disposal, soil disposal, and recycling company, was located at 17 Griffin Road, Charlton, Massachusetts 01507.  RecTec is a person under 18 U.S.C. § 1961(3).

B.      **Misconduct of RecTec**:  McCambridge used RecTec to inflate the direct cost invoices for at least the Atlas Park project.  McCambridge used his managerial position at RecTec to directly conspire and generate a scheme to defraud with Ruocco, Tomicic, and ETI.  The scheme to defraud injured at least Plaintiff ATCO in its business and property.

C.      **Basis of Liability of RecTec**:  McCambridge used his managerial position at RecTec to participate and conspire to participate in, direct, and

7

manage the predicate acts that form the pattern of racketeering activity which injured at least Plaintiff ATCO in its business and property.

**3.    List the potential wrongdoers, other than the defendants listed above, and separately state the potential misconduct of each wrongdoer.**

**I.    The Abrams Trust**

The Abrams Trust is a trust created by Ruocco for the benefit of his children.  Its trustee is Armand Cuozzo ("Cuozzo").  The Abrams Trust is headquartered at the same address as ETI and SRS—both Ruocco-owned companies—at 250 Sackett Point Road, North Haven, Connecticut 06473.

On November 24, 2011, The Abrams Trust accepted a promissory note from McCambridge and RecTec by which McCambridge and RecTec promised to pay The Abrams Trust $721,105.50.  Thus, it is reasonable to believe that The Abrams Trust benefitted from the Enterprise's scheme to defraud at least Plaintiff ATCO by inflating direct cost invoices.

**II.    Armand Cuozzo**

Armand Cuozzo is the trustee of The Abrams Trust.  As trustee, Cuozzo was employed to make decisions based on due diligence and in the best interest of the trust's beneficiaries, Ruocco's children.  Cuozzo may have been aware of the Enterprise's scheme to defraud at least Plaintiff ATCO.  Cuozzo may have been aware that The Abrams Trust would benefit from the Enterprise's fraudulent activities that damaged at least Plaintiff ATCO.

8

### III.    <u>SRS Transportation Company, LLC</u>

SRS, a Ruocco-owned company, provided $425,000.00 in start-up funds to McCambridge and RecTec between May 26, 2004, and December 1, 2004.  These start-up funds provided by Ruocco helped solidify the Enterprise which Ruocco, Tomicic, and ETI formed with McCambridge and RecTec and which then conspired to defraud at least Plaintiff ACTO.  Ruocco, on behalf of SRS, filed SRS's articles of dissolution on December 31, 2004, just one month after providing the last wire transfer of start-up funds from SRS to McCambridge and RecTec.

SRS provided the front for Ruocco to fund RecTec.  In turn, Ruocco, Tomicic, and ETI benefitted from increased fraudulent profits on at least the Atlas Park project because of the equity and shared profits held in RecTec.

### IV.    <u>Steven P. Ciardiello</u>

Steven P. Ciardiello is an individual who provided attorney services to the Enterprise and was the registered agent of SRS.  Ciardiello provided attorney services to the Enterprise at least by drafting the documents regarding RecTec's operating agreement, its operation and equity agreement, its board of directors documents, and even its promissory note to The Abrams Trust.  Ciardiello drafted these documents at Ruocco's request.  Ciardiello kept these private documents at his office in his safe.  Moreover, Ciardiello was the company agent for SRS, the Ruocco-owned company used to provide start-up funds to RecTec.

9

As the Enterprise's lawyer, Ciardiello influenced, advised, strategized, and, upon information and belief, aided Ruocco, Tomicic, and McCambridge in using their companies, ETI, and RecTec, to commit the fraudulent activity that damaged at least Plaintiff ATCO. Ciardiello participated in the formation of the documents that created the Enterprise and participated in the funding of RecTec by SRS—a move that allowed the Enterprise to form and begin perpetrating acts against at least Plaintiff ATCO in its business and property. It is reasonable to believe that Ciardiello knew of the Enterprise's fraud and conspiracy to commit fraud, and even profited from it, thus resulting in not only civil claims, but also attorney ethics violations.

**V.    Plaza**

Plaza provided ATCO with general contractor services at the Atlas Park site. As general contractor, Plaza approved all bills eventually submitted to ATCO, including those submitted by Defendants including ETI. Moreover, as general contractor, Plaza was allotted 21% compensation on all invoices submitted to ATCO. Because of the Fraudulent Invoices from the Enterprise, Plaza thus received at least an additional $73,301.08 regarding at least the Twelve Fraudulent Services—the at least twelve services that Clean Earth provided for the Atlas Park project of which RecTec inflated the direct costs before submitting the invoices to ETI.

10

It is unknown at this time whether Plaza was aware that the Enterprise was inflating direct cost invoices to levels far higher than the direct costs of the services provided.

## VI.    Clean Earth of New Jersey

Clean Earth provided the ETI Project with transportation and disposal services for at least the Twelve Fraudulent Services. Tomicic instructed Clean Earth, with whom ETI had a pre-existing business relationship, to send all direct cost invoices to RecTec.

It is unknown at this time whether Clean Earth was aware that Clean Earth was told to do same so that the Enterprise could defraud Plaintiff ATCO by inflating the direct costs of the invoices from Clean Earth.

**4.    List the victims, and separately state how each victim was injured.**

Plaintiff ATCO is at least one of the victims of the Enterprise's scheme to inflate invoices and conspire to inflate invoices submitted to ETI customers. ATCO is a real estate and asset management firm that has suffered RICO injuries as a proximate cause of the pattern of racketeering activity. ATCO is a person under 18 U.S.C. § 1961(3).

As a direct and proximate result of the foregoing pattern of racketeering, ATCO has suffered damage to its property and is entitled to receive treble the damages that it has suffered due to Defendants' violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). If not for the Enterprise's racketeering efforts and conspiracy to commit the predicate acts which constitute the pattern of

11

racketeering activity, ATCO would have been charged the direct costs of services, plus an agreed upon percent profit for all services provided to it by ETI in the construction of Atlas Park.  However, the fraudulent racketeering activities the Enterprise conspired to devise inflated invoices to ATCO, which were the direct cause of ATCO's at least $405,068.04 in damages (close to $600,000.00 with pre-judgment interest as calculated at the time of filing).

**5.      Describe in detail the pattern of racketeering activity or collection of an unlawful debt for each RICO claim. A description of the pattern of racketeering activity shall:**

**a.  List the specific statutes violated by each predicate act;**

The pattern and practice of racketeering activities includes, but may not be limited to, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.  These racketeering activities are enumerated in 18 U.S.C. § 1961(1).

**b.  State the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding each predicate act;**

As set out more fully in Plaintiff's complaint, the commission of these related predicate acts over the period of time alleged constitute a continuous and related pattern of racketeering activity as defined in 18 U.S.C. § 1961(1) and (5). This pattern of racketeering activity entails at least two instances of racketeering activity by Defendants, at least one of which occurred within ten years of the commission of a prior act of racketeering activity.

I.    **Conspiracy to Commit Predicate Acts**:

A.    **The Enterprise is Created**: Defendants conspired to create the Enterprise that defrauded at least Plaintiff ATCO as early as May 26, 2004, when Ruocco, through his company SRS, began providing start-up funds to RecTec.  Defendants continued to conspire against at least ATCO when, on November 24, 2004, Ruocco, Tomicic, and McCambridge executed the RecTec operation and equity agreement providing that they would all receive equity and shared profit from RecTec.  This agreement allowed all three individuals, as well as the companies they managed and directed, to share in the fraudulent profits that the Enterprise received as a result of inflating invoices on at least the Atlas Park project.  *See* attached Appendix A—Defendants' Predicate Acts Table.

B.    **The Enterprise Conspires to Create a Scheme and Artifice to Defraud ATCO**:    Defendants conspired to defraud ATCO by late December 2004.  Clean Earth proposed to Tomicic and ETI a cost for transportation and disposal of certain Polluted Materials from the Atlas Park site.  Tomicic instructed Clean Earth to forward the disposal proposals to McCambridge and RecTec.  On December 28, 2004, Clean Earth sent a proposal for the transportation and disposal of certain Polluted Materials to McCambridge and RecTec.  Thus, the Enterprise successfully conspired to funnel the direct cost invoices for the Atlas Park project from Clean Earth through McCambridge and RecTec.

13

On January 5, 2005, McCambridge asked Tomicic what the next steps were regarding the invoices. On January 7, 2005, McCambridge received a spreadsheet from ETI detailing the prices to which RecTec should inflate the direct cost invoices. *See* attached Appendix A—Defendants' Predicate Acts Table.

**C.    The Enterprise Conspires to Make ATCO Justifiably Rely on the Enterprise's Misrepresentations Constituting the Predicate Acts**: Tomicic submitted price change estimates to Plaza on at least January 22, 2005, March 25, 2005, and October 7, 2005, which included some of the fraudulently inflated invoices from RecTec. On at least February 2, 2005, April 30, 2005, and May 26, 2005, Tomicic sought certification for the payment of some of the fraudulent invoices from RecTec by submitting application for the certification of payment to Plaza. On August 3, 2005, Tomicic faxed a memo to ATCO employee Mark Powers detailing the fraudulent inflations and attempting to legitimize the invoice inflations. It got worse: in furtherance of the conspiracy, Tomicic faxed bogus competitive bids to ATCO employee Mark Powers to make it seem as if ETI had received competitive bids from other disposal companies which were higher than the inflated prices charged by RecTec. ATCO justifiably relied on the Enterprise's misrepresentations and paid the inflated invoices. *See* attached Appendix A—Defendants' Predicate Acts Table.

**II.**     <u>**Predicate Acts of Mail Fraud**</u>: All Defendants committed mail fraud by devising and intending to devise a scheme and artifice to defraud at least Plaintiff ATCO.  The Defendants knowingly delivered by mail and private and commercial interstate carriers certain documents in furtherance of the Enterprise, including but not limited to checks, in violation of 18 U.S.C. § 1341.  Defendants violated 18 U.S.C. § 1341 by obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises to at least Plaintiff ATCO, for the purpose of executing their scheme and artifice to defraud.

The fraudulent acts constituting violations of 18 U.S.C. § 1341 occurred at least 46 times when the Defendants used interstate postal service and commercial carriers in furtherance of their scheme and artifice to defraud.  The Defendants' fraud was intentional and at least Plaintiff ATCO was an intended victim of Defendants' scheme to defraud.  These mailings occurred from at least as early as December 28, 2004, until at least as late as March 20, 2007.  *See* attached Appendix A—Defendants' Predicate Acts Table.

**III.**    <u>**Predicate Acts of Wire Fraud**</u>: All Defendants committed wire fraud by devising and intending to devise a scheme and artifice to defraud at least Plaintiff ATCO.  The Defendants knowingly transmitted by means of wire communications in interstate commerce writings, signs, signals, pictures and sounds, including, at least, facsimiles, interstate telephone calls, and e-mails in violation of 18 U.S.C. § 1343.  Defendants violated 18 U.S.C. § 1343 by obtaining

15

money and property by means of materially false and fraudulent pretenses, representations, and promises to at least Plaintiff ATCO, for the purpose of executing their scheme and artifice to defraud.

The fraudulent acts constituting violations of 18 U.S.C. § 1343 occurred at least 25 times when the Defendants used interstate electronic wires in furtherance of their scheme and artifice to defraud. The Defendants' fraud was intentional, and Plaintiff ATCO, at least, was an intended victim of Defendants' scheme to defraud. These electronic wires occurred from at least as early as December 28, 2004 until at least as late as October 7, 2005. *See* attached Appendix A—Defendants' Predicate Acts Table.

> c. **If the RICO claim is based upon the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under Title 11, United States Code, the "circumstances constituting fraud or mistake shall be stated with particularity," Federal Rule of Civil Procedure 9(b). Identify the time, place, and contents of the misrepresentation or omissions, and the identity of persons to whom and by whom the misrepresentations or omissions were made;**

I.  <u>**Who Made the Statements or Omitted to Speak?**</u>:  Ruocco, Tomicic, and McCambridge made fraudulent statements and omitted to speak.

II.  <u>**What are the False Statements or Omissions?**</u>:

A.  <u>**Inflated Invoices**</u>: Ruocco, Tomicic, and McCambridge conspired to submit and submitted the fraudulent invoices to at least Plaintiff ATCO. These fraudulent invoices included inflations of the direct costs of portions of the ETI Project.

16

**B.**    **Fraudulent Documents**: Ruocco and Tomicic used ETI and McCambridge used RecTec to create back-up budgeting documentation to legitimize the inflations on Plaintiff ATCO's Atlas Park project.  Tomicic has already been found guilty of the fraudulent creation of back-up documentation—the bogus competitive bids supplied to ATCO.

**C.**    **Financial Relationships of the Enterprise**: Ruocco, Tomicic, and McCambridge omitted to notify Plaintiff ATCO of the financial and equity relationships between themselves.  ATCO was not aware of Ruocco's and Tomicic's use of ETI to self-deal by routing direct cost invoices through RecTec and manager McCambridge in order to inflate the direct costs of certain services provided to ATCO.

**III.**    **When and Where did the Speakers Make the False Statements or Omit to Speak?:**  Ruocco, Tomicic, and McCambridge omitted to speak and made fraudulent statements while conducting business via email, mail, and facsimile in at least Charlton, Massachusetts, North Haven, Connecticut, Glendale, New York, and South Kearny, New Jersey, and while conducting business on the Atlas Park project site in Glendale, New York.

Ruocco, Tomicic, and McCambridge omitted to speak and made fraudulent statement throughout at least the consummation of the sub-contract for the excavation and remediation work at Atlas Park, throughout at least the excavation and remediation work at Atlas Park, throughout at least the conspiracy to inflate the direct costs of certain portions of the excavation and

17

remediation work at Atlas Park, and throughout at least the payments for the excavation and remediation work at Atlas Park—a period from at least September 2, 2004—the date of the ETI sub-contract with Plaza—through at least March 20, 2007—the date of a payment from ETI to RecTec. *See* attached Appendix A—Defendants' Predicate Acts Table

**IV.** **To Whom did the Speakers Make the False Statements or Omit to Speak?:** Ruocco, Tomicic, and McCambridge omitted to speak to at least employees, owners, and other professionals working for property developer ATCO, including, but not limited to, Damon Hemmerdinger, Linda Shaw, and Mark Powers, regarding the Defendants' financial interconnections and decisions to inflate invoices for the direct costs of certain services provided to victim ATCO. Tomicic submitted fraudulently created competitive bids, inflated invoices, and budget overestimations to ATCO employees, including, but not limited to, Damon Hemmerdinger, Linda Shaw, and Mark Powers, regarding the direct costs of at least the Twelve Fraudulent Services provided to ATCO.

**V.** **Why were Statements or Omissions False or Misleading?:** Although Ruocco, Tomicic, and ETI asserted the invoices they submitted to ATCO reflected direct costs of the services provided by ETI, the invoices actually included major inflations after being routed through RecTec and manager McCambridge. The inflations were also false as they were not based on the provision of any service or value of any kind.

18

It was misleading for Ruocco, Tomicic, and ETI to engage McCambridge and RecTec—a company in which both Ruocco and Tomicic held equity and shared profits—to increase the direct costs of certain portions of at least the services provided to Plaintiff ATCO because McCambridge and RecTec provided nothing of value.

The bids and overestimations regarding the direct costs of certain services submitted by Tomicic were false.  The so-called "competitive bids" were fabricated by Tomicic and the budget estimations were inflated despite no increase in direct costs.

These material misrepresentations and omissions led ATCO to pay invoices where McCambridge and RecTec had inflated the invoice price without providing any additional services to ATCO.

**VI.**    <u>**Why Was It Reasonable for Plaintiff to Believe the False Statements or**</u> <u>**to Not Question the Omissions?**</u>: The Defendants took advantage of ATCO's willingness to expend increased resources to dispose of contaminated soils and materials in an environmentally sustainable fashion. The Enterprise, in realizing ATCO was overseeing a roughly 200 million dollar development project, took advantage of the bustling atmosphere to increase their own profits through their self-dealing invoice inflations.

ATCO reasonably believed that the excavation and remediation work regarding certain services provided to ATCO could significantly increase the costs of the project, and thus, believed ETI's false budget estimates.  It was

19

reasonable that ATCO believed that the bogus competitive bids created by Tomicic were actual competitive bids submitted to ETI.

The Defendants created inflated invoices, backed by fraudulently created documentation, including bogus competitive bids, to increase the Defendants' profits by billing ATCO at an inflated direct cost. Due to the fraudulently created back-up documentation, of which Tomicic has already been found guilty in criminal court, it was reasonable that ATCO relied on Defendants' fraudulent misrepresentations.

**VII.    The Common Course of Conduct of Fraud and Reliance Upon It**: Ruocco, Tomicic, and McCambridge repeatedly misled at least ATCO to believe that the invoice inflations from McCambridge and RecTec regarding the direct costs of certain portions of the services provided were legitimate business expenses, and that the invoices routed through RecTec were not, in fact, a fraudulent sham that the Defendants created in order to generate more profit for Ruocco, Tomicic, McCambridge, ETI, and RecTec. The Defendants worked together for this purpose of fraud and ATCO justifiably relied on the Defendants' representations that the inflations from McCambridge and RecTec were legitimate business expenses and that the bogus competitive bids from Tomicic were legitimate bids whereby Ruocco, Tomicic, and ETI had decided that McCambridge and RecTec offered the lowest cost services for transportation and disposal of certain portions of the ETI Project.

**d. State whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity;**

I.      **McCambridge**:  McCambridge pleaded guilty to a one-count Information charging him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371.  The July 7, 2009 McCambridge plea agreement with the Government demonstrates McCambridge's association with the Enterprise that defrauded at least Plaintiff ATCO.

II.     **Tomicic**:  Tomicic was found guilty of wire fraud in violation of 18 U.S.C. § 1343.  On November 4, 2011, a jury in the United States District Court, District of Connecticut found Tomicic guilty for the facsimile transmission of counterfeit competitive bids, sent from ETI in Connecticut to ATCO employee Mark Powers in New York on September 8, 2005.

III.    **Ruocco and ETI**:  On November 4, 2011, Ruocco and ETI were acquitted of the same charges brought against Tomicic because, under the beyond a reasonable doubt standard employed in criminal matters, it may not have been sufficiently clear to the jury that Ruocco aided—and likely directed—his employee, Tomicic, in committing wire fraud.  It is, however, readily apparent that Ruocco and ETI directed and managed the fraudulent actions completed by the Enterprise to defraud property developer ATCO out of hundreds of thousands of dollars.

**e.** **Describe in detail the perceived relationship that the predicate acts bear to each other or to some external organizing principle that renders them "ordered" or "arranged" or "part of a common plan[;]"**

The predicate acts of mail fraud, wire fraud, and any other improper acts stretch back to at least December 28, 2004, and continued to at least March 20, 2007.  These predicate acts were related in the common purpose and scheme to fraudulently inflate invoices submitted to customers, including at least ATCO, to rates far above the direct costs of the services provided by sub-contract in order to generate fraudulent profits for the Defendants.  Moreover, the Defendants had a common plan to legitimize such inflations with fraudulently created back-up documentation.

**f.** **Explain how the predicate acts amount to or pose a threat of continued criminal activity.**

The specific Enterprise detailed here represents closed ended continuity, a closed period of repeated conduct constituting predicate acts which generate a pattern of racketeering activity over a substantial period of time.  Although RecTec has been dissolved and McCambridge and Tomicic have been found guilty of criminal acts related to the Enterprise's fraud, it is reasonable to believe that Ruocco and ETI will continue to defraud customers with inflated invoices as has been alleged previously and as is alleged now.  *See* Grand Jury Indictment, dated September 16, 2009, and attached to the Complaint as Exhibit 3, and Press Release titled "Controversial State Contractor Frank Ruocco Not Guilty in Federal Fraud Trial," dated November 4, 2011, and attached to the Complaint as

Exhibit 4. In fact, as described more fully in Plaintiff's complaint, this is a pattern of behavior for Ruocco as demonstrated by previous allegations against Ruocco's companies where similar fraudulent inflations on direct cost invoices occurred. *See* Press Release titled "DOT Overrode Blumenthal, Kept Firm on Hire List," dated August 30, 2010, and attached to the Complaint as Exhibit 7.

**6.    State whether the existence of the "enterprise" is within the meaning of 18 U.S.C. § 1961(4).**

Ruocco, Tomicic, McCambridge, ETI, and RecTec constitute a group of "person(s)" under 18 U.S.C. § 1961(3) who associated in fact to form an Enterprise to provide soil remediation services and site redevelopment services. The Defendants utilized their Enterprise by association in fact to then conspire and commit a pattern of racketeering activity, including the predicate acts of at least mail and wire fraud, which proximately caused injuries to at least Plaintiff ATCO.

**7.    Describe in detail the enterprise for each RICO claim. A description of the enterprise shall:**

The Enterprise, an association in fact Enterprise by Ruocco, Tomicic, McCambridge, ETI, and RecTec, is the same Enterprise for each violation of 18 U.S.C. § 1962.

**a. State the names of the individuals, partnerships, corporations, associations, or other entities constituting the enterprise;**

Defendants Ruocco, Tomicic, McCambridge, ETI, and RecTec had an ongoing business relationship that constituted an "association in fact" Enterprise

within the meaning of 18 U.S.C. § 1961(4) that was engaged in, or the activities of which affected, interstate or foreign commerce.  The members of the Enterprise have defined roles, and the Enterprise as a whole had structures and hierarchies.

   b. **Describe the structure, purpose, roles, function, and course of conduct of the enterprise;**

I.    <u>**Structure and Roles**</u>:  Ruocco is the president and owner of ETI.  Ruocco employed ETI project manager Tomicic to head the Atlas Park project whereby the Enterprise defrauded Plaintiff ATCO.  Ruocco, through SRS, also provided at least $425,000.00 in start-up funds to McCambridge and McCambridge's company RecTec.  McCambridge was a principal and manager of RecTec.  On November 24, 2004, Ruocco, Tomicic, and McCambridge connected their companies by executing RecTec's operation and equity agreement which provided for equity in and shared profits from RecTec to be divided among Ruocco, Tomicic, and McCambridge.

II.    <u>**Purpose and Function**</u>:  The members of the Enterprise created the Enterprise and came together to provide customers with soil remediation and site redevelopment services.

III.    <u>**Course of Conduct**</u>:  The Enterprise engaged in and conspired to engage in a fraudulent course of conduct when conducting services for at least customer Plaintiff ATCO.  By fraudulently inflating invoices and creating fraudulent back-up documentation, the Enterprise engaged in predicate acts enumerated by RICO.  The violation of the predicate acts created a pattern of racketeering

activity whereby the Enterprise defrauded at least Plaintiff ATCO and injured it in its business and property.

  **c. State whether any defendants are employees, officers, or directors of the enterprise;**

The Enterprise is an association in fact enterprise, not a legal entity, and, therefore, none of the Defendants are employees, officers, or directors of the Enterprise.

  **d. State whether any defendants are associated with the enterprise, and if so, how;**

All Defendants are associated with the Enterprise's common purpose and also with its conspiracy to commit fraud, fraudulent conduct, and a pattern of racketeering activity that injured at least Plaintiff ATCO.

- Defendant Ruocco is president and owner of Defendant ETI.

- Defendant Tomicic was a project manager of Defendant ETI.

- Defendant McCambridge was a principal and manager of Defendant RecTec.

- Defendant ETI provided the customers to be defrauded.

- Defendant RecTec inflated invoices on the direct cost services.

- Defendants Ruocco, Tomicic, and McCambridge all shared in the profit and held equity in Defendant RecTec. All five Defendants worked together to provide soil remediation and site redevelopment services. However, all five Defendants also conspired to defraud and successfully defrauded at least customer ATCO while engaging in the Enterprise's

25

otherwise legal function of providing soil remediation and site redevelopment services.

e. **Explain how each separate defendant participated in the direction or conduct of the affairs of the enterprise;**

I.     <u>Ruocco</u>:  Ruocco participated in the direction of the Enterprise by secretly funding RecTec, utilizing his attorney, Ciardiello, to create the RecTec corporation documents at his request, sharing in the profit and equity of RecTec, conspiring with Tomicic and McCambridge to fraudulently inflate bills submitted to at least customer ATCO, and authorizing employee Tomicic to create fraudulent back-up documentation to legitimize the Enterprise's invoice inflations to at least Plaintiff ATCO.

II.    <u>Tomicic</u>:  Tomicic participated in the direction of the Enterprise by sharing in the profit and equity of RecTec, conspiring with Ruocco and McCambridge to fraudulently inflate bills submitted to at least customer ATCO, and generating fraudulent back-up documentation to legitimize the Enterprise's invoice inflations to at least Plaintiff ATCO.

III.   <u>McCambridge</u>:  McCambridge participated in the direction of the Enterprise by conspiring with Tomicic and Ruocco to route direct cost service invoices for at least the Atlas Park project through RecTec so that they could be inflated to levels far higher than the direct costs of the services provided.  By using his company and interstate mailings and wire transfers, McCambridge

26

inflated the invoices submitted to at least Plaintiff ATCO while providing no additional services.

**IV.** **ETI**:  ETI participated in the direction of the Enterprise by providing the customers seeking soil remediation and site redevelopment.  Without ETI's customers, the Enterprise would never have received the customers whom it defrauded with inflated invoices.

**V.** **RecTec**:  RecTec participated in the direction of the Enterprise by providing the company through which ETI routed invoices.  RecTec inflated these invoices while providing no additional services.  ETI's business relationship with RecTec in providing site redevelopment and soil remediation services was crucial in providing an otherwise legitimate company through which the Enterprise fraudulently inflated invoices to defraud at least Plaintiff ATCO.

    **f.  State whether you allege**

        **(i) that the defendants are individuals or entities separate from the enterprise, or**

Not Applicable.

        **(ii) that the defendants are the enterprise itself, or**

Not Applicable.

        **(iii) that the defendants are members of the enterprise; and**

All five Defendants associated in fact to create the Enterprise with the common purpose of site redevelopment and soil remediation.  The Enterprise

27

engaged in a pattern of racketeering activity to injure at least Plaintiff ATCO in its business and property.

g.  **If you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the racketeering activity.**

Plaintiff does not allege that any Defendant is the Enterprise itself.  All Defendants together are perpetrators of the racketeering activity.

8.  **State whether you allege, and describe in detail, how the pattern of racketeering and the enterprise are separate or have merged into one entity.**

The pattern of racketeering committed by the Enterprise and the Enterprise's legitimate business functions are separate.  The five Defendants associated in fact to create the Enterprise to provide customers with site redevelopment and soil remediation services.  The pattern of racketeering the Enterprise engaged in separately refers to the Enterprise's fraudulent acts in inflating invoices submitted to at least Plaintiff ATCO and creating false backup documentation for those invoices.  This pattern, predicated on at least mail and wire fraud, if not on other criminal activities, constitutes the pattern of racketeering that the Enterprise separately engaged in.

9.  **Describe the relationship between the activities and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The usual and daily activities of the Enterprise are providing soil remediation and site redevelopment services to its customers.  The racketeering activity is different from these daily and usual activities.   ATCO had an

28

agreement with ETI to pay direct cost services plus 15% compensation.    By conspiring to route direct cost invoices through McCambridge and RecTec, who provided no additional services, but merely fraudulently inflated the invoices to levels much higher than the direct costs of the services provided, the Enterprise engaged in a pattern of racketeering activity.    This racketeering activity to fraudulently inflate invoices was different from the usual and daily activities of the Enterprise to provide soil remediation and site redevelopment services.

10.    **Describe what benefits, if any, the enterprise and each defendant received from the pattern of racketeering activity.**

The pattern of racketeering activity damaged Plaintiff ATCO by at least $405,068.04 (close to $600,000.00 with pre-judgment interest as calculated at the time of filing).

- $291,101.72 of these damages came directly from RecTec's invoice inflations.    This money was split among Ruocco, Tomicic, and McCambridge according to the RecTec operation and equity agreement. Profits fraudulently diverted to RecTec benefited RecTec's business and McCambridge as the company's manager.

- The increase in ETI's allotted 15% compensation due to the invoice inflations from RecTec resulted in an additional gain of $43,665.26, which directly benefitted ETI's business, Ruocco as the company's president and owner, and Tomicic as an employee.

29

- At least \$70,301.08 did not actually benefit the Enterprise, but went to Plaza as the increase in Plaza's allotted 21% compensation due to the invoice inflations from RecTec. Plaza's increased profits did not benefit the Enterprise, yet the Enterprise's predicate acts formulating the pattern of racketeering activity were the proximate cause for Plaintiff ATCO being damaged by this additional \$70,301.08. *See* attached Appendix B—ATCO's Damages Caused by the Enterprise's Predicate Acts.

**11.    Describe the effect of the enterprise's activities on interstate or foreign commerce.**

The Enterprise's fraudulent activities involved interstate commerce. McCambridge and RecTec utilized Hometown Bank, a Massachusetts cooperative bank, a financial institution engaged in interstate commerce whose customer deposits were insured by the Federal Deposit Insurance Corporation, to receive money from Ruocco, Tomicic, and ETI. Ruocco, Tomicic, and ETI utilized People's Bank, Inc., a Connecticut bank, a financial institution engaged in interstate commerce whose customer deposits were insured by the Federal Deposit Insurance Corporation, to receive money from Plaintiff ATCO, who was fraudulently charged the inflated costs.

The Enterprise used postal office mailings and interstate commercial carriers to deliver fraudulent checks from at least ETI in Connecticut to RecTec in Massachusetts and from RecTec in Massachusetts to Clean Earth in New Jersey. The Enterprise used interstate electronic wires to send writings, signs, signals,

pictures and sounds, including at least facsimiles, interstate telephone calls, and e-mails in at least the states of New Jersey (the location of Clean Earth), Massachusetts (the location of RecTec), Connecticut (the location of ETI), and New York (the location of Plaintiff ATCO and the Atlas Park construction site).

12.     **If the complaint alleges a violation of Title 18, United States Code, Section 1962(a), provide the following information: (a) State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and, (b) Describe the use or investment of such income.**

Not Applicable.

13.     **If the complaint alleges a violation of Title 18, United States Code, Section 1962(b) provide the following information: (a) Describe in detail the acquisition or maintenance of any interest in or control of the enterprise; and, (b) State whether the same entity is both the liable "person" and the "enterprise" under section 1962(b).**

Not Applicable.

14.     **If the complaint alleges a violation of Title 18, United States Code, Section 1962(c) provide the following information:**

   a.  **State who is employed by or associated with the enterprise; and**,

Ruocco, Tomicic, McCambridge, ETI, and RecTec all associated to form the Enterprise.

   b.  **State whether the same entity is both the liable "person" and the "enterprise" under section 1962(c).**

Each of the five Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).  At all times relevant, each Defendant was a person associated with the Enterprise and conducted or participated, directly or indirectly, in the operation

and management of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

**15.   If the complaint alleges a violation of Title 18, United States Code, Section 1962(d), describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement.**

I.   <u>Conspirators</u>:  Ruocco, Tomicic, and McCambridge conspired to use their companies, ETI and RecTec, to create a scheme to defraud at least Plaintiff ATCO.

II.   <u>Period of Conspiracy and Agreement to Conspire</u>:  The conspiracy to defraud at least Plaintiff ATCO may have begun as early as May 26, 2004, when Ruocco, through his company SRS, began providing RecTec with start-up funds. On November 24, 2004, Ruocco, Tomicic, and McCambridge executed RecTec's operation and equity agreement which divided the equity and profits of RecTec among them.  By December 28, 2004, the conspiratorial plans were in motion, as Clean Earth, at the behest of Tomicic and ETI, provided McCambridge and RecTec with proposed transportation and disposal costs for portions of the Twelve Fraudulent Services.  The Enterprise's conspiracy lasted until at least March 20, 2007, the date of one of the last known payments from ETI to RecTec. But, the conspiracy may have lasted far longer, until at least RecTec's dissolution on April 30, 2009.

III.   <u>Object of the Conspiracy</u>: The conspiracy attempted to defraud and did defraud ETI customers.  Many construction projects provide for compensation

32

for sub-contractors on a direct cost of service plus percent profit basis. The Enterprise defrauded at least Plaintiff ATCO by inflating the direct costs of the services provided to prices far higher than the actual direct costs. These inflations, in turn, increased the percent profits allotted to ETI. No services were provided to justify these price inflations.

IV.    **Overt Acts in Furtherance of the Conspiracy**: Every predicate act committed by the Enterprise was in furtherance of the conspiracy. *See* Appendix A—Defendants' Predicate Acts Table. Specifically, Tomicic furthered the conspiracy by instructing Clean Earth to send certain transportation and disposal proposals to McCambridge and RecTec in order for invoices to be funneled through McCambridge's company RecTec. On January 7, 2005, the conspiracy was furthered when a spreadsheet was faxed from ETI to McCambridge and RecTec stating the prices to which to inflate the direct cost invoices before submitting them to Ruocco, Tomicic, and ETI. *See* Appendix A—Defendants' Predicate Acts Table.

V.    **Enterprise's Knowledge that the Predicate Acts Constituted a Pattern of Racketeering Activity**: Ruocco, Tomicic, and McCambridge instructed Ciardellio, the attorney in charge of generating RecTec's operation and equity agreement, as well as various other corporate documents, to keep the documents private and locked in his safe. The Defendants understood that their self-dealing would be better kept secret if the documents constituting their association in fact were kept private.

33

Tomicic further demonstrated the Defendants' knowledge of the predicate acts they committed by faxing a memo purporting to legitimize the RecTec inflations to ATCO employee Mark Powers on August 3, 2005, and later faxing ATCO employee Mark Powers bogus competitive bids on September 8, 2005, to legitimize the invoice prices submitted to ATCO, which had been funneled through McCambridge and RecTec for inflations. *See* Appendix A—Defendants' Predicate Acts Table.

Lastly, on July 7, 2009, McCambridge, in a plea agreement with the government, admitted that he conspired to defraud a property developer. Upon information and belief, this property developer is Plaintiff ATCO.

**16.    Describe the injury to business or property.**

At least Plaintiff ATCO, as a direct and proximate cause of the Enterprise's predicate acts constituting at least mail and wire fraud, has been injured in its business or property. The business, property, and injuries are described below.

**I.    The Business**: The Hemmerdinger Corporation d/b/a ATCO is a family of companies that develops real estate, manages assets, and provides other resources for the real estate industry. ATCO has been incorporated in New York since 1922, and is headquartered at 555 Fifth Avenue, 16th Floor, New York, NY 10017. ATCO's Glendale office is located at 70-34 83rd Street, Glendale, NY 11385. ATCO provided all equity for Atlas Park and oversaw the Atlas Park

34

project from its Glendale office. ATCO contracted general contractor responsibilities for site construction to Plaza.

**II.** **The Property**: ATCO owned a 12-acre former industrial lot in Glendale, Queens, at 80-28 Cooper Avenue, Glendale, NY 11385. ATCO planned to develop the property into a shopping mall.

**III.** **The Injuries**: The Twelve Fraudulent Services and their combined damages to ATCO amount to at least $405,068.04 (close to $600,000.00 with pre-judgment interest as calculated at the time of filing). *See* attached Appendix B—ATCO's Damages Caused by the Enterprise's Predicate Acts. These fraudulent charges damaged ATCO in its business and property as it significantly increased the cost of ATCO's development of Atlas Park.

17. **Describe the nature and extent of the relationship between the injury and each separate RICO violation.**

But for the existence of and fraudulent acts by Defendants, at least Plaintiff ATCO would not have suffered injuries. There is a direct causal relationship between this injury and the pattern of racketeering activity. If not for Defendants' conspiracy, in violation of 18 U.S.C. § 1962(d), Defendants would not have engaged in the pattern of racketeering activity that damaged ATCO. Once the conspiracy was set, the Defendants, in violation of 18 U.S.C. § 1962(c), engaged in the predicate acts of mail and wire fraud which allowed the Enterprise to inflate invoices submitted to Plaintiff ATCO and thus damage ATCO in its business and property.

35

18.  **For each claim under a subsection of Title 18, United States Code, Section 1962, list the damages sustained by reason of each violation, indicating the amount for which each defendant is liable.**

The Defendants violated 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).  Their pattern of racketeering activity damaged Plaintiff ATCO by at least $405,068.04 (close to $600,000.00 with pre-judgment interest as calculated at the time of filing).  All five Defendants, as a whole, are liable to Plaintiff ATCO for a combined at least $405,068.04 (close to $600,000.00 with pre-judgment interest as calculated at the time of filing) trebled, as well as the cost of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).  Defendants conspired and acted together to defraud Plaintiff ATCO and, therefore, the liability for injuries to ATCO is assignable to the Enterprise as a whole.

19.  **Detail when Plaintiff was noticed of the damages sustained by reason of Defendants' violation of Title 18, United States Code, Section 1962.**

During the ETI Project, ATCO was never aware of the Enterprise's self-dealing invoice inflations.  The Enterprise's fraud remained unnoticed by ATCO because the Enterprise hid the falsity of the Fraudulent Invoices by, amongst other things, supporting them with bogus back-up documents, and providing ATCO with misleading overestimations regarding the direct costs for at least the Twelve Fraudulent Services.  The fraud went unnoticed by ATCO until, at the absolute earliest, June 4, 2008, when EPA Investigator Thomas Rudman contacted ATCO to discuss ETI's invoices on the Atlas Park project.  Sometime between the initial contact from Rudman on June 4, 2008, and the creation of a

36

Victim Impact Statement on August 17, 2009, ATCO learned of the fraud the Enterprise committed against it.

**20.     Provide any additional information you feel would be helpful to the Court in processing your RICO claim.**

Plaintiff ATCO believes that further investigation and future discovery will reveal essential information regarding potential additional victims as well as the possibility of additional Defendants, including perhaps wrongdoers noted above, the extent of complicity and fraudulent activities engaged in by the Enterprise, as well as more information regarding the role of certain Defendants in consistently inflating invoices on customer projects as a matter of practice. Plaintiff intends to seek leave to amend this RICO Statement as such information becomes available.

Dated:  May 25, 2012        By:
       New York, New York        John G. Balestriere
                                 Jillian L. McNeil
                                 **BALESTRIERE FARIELLO**
                                 225 Broadway, Suite 2900
                                 New York, NY 10007
                                 Telephone: (212) 374-5401
                                 Facsimile:  (212) 208-2613
                                 *Attorneys for Plaintiff*

37

# Appendix A

Case 1:12-cv-02650-WFK-VMS    Document 1-3    Filed 05/25/12    Page 39 of 46 PageID #: 306

**Appendix A – Defendants' Predicate Acts Table**

| Number | Date | Type of Predicate Act[1] | Description |
|---|---|---|---|
| | **2004** | | |
| 1. | 5-26-04 | Conspiracy | SRS Wire Transfer to RecTec for $75,000.00 |
| 2. | 6-22-04 | Conspiracy | SRS Wire Transfer to RecTec for $75,000.00 |
| 3. | 7-31-04 | Conspiracy | SRS Wire Transfer to RecTec for $75,000.00 |
| 4. | 9-14-04 | Conspiracy | SRS Wire Transfer to RecTec for $75,000.00 |
| 5. | 10-13-04 | Conspiracy | SRS Wire Transfer to RecTec for $75,000.00 |
| 6. | 11-24-04 | Conspiracy | RecTec Operation and Equity Agreement |
| 7. | 11-24-04 | Conspiracy | RecTec Board of Directors Appointment |
| 8. | 11-24-04 | Conspiracy | RecTec and McCambridge Promissory Note to The Abrams Trust for $721,105.50 |
| 9. | 12-01-04 | Conspiracy | SRS Wire Transfer to RecTec for $50,000.00 |
| 10. | 12-23-04 | Conspiracy | Clean Earth Disposal Proposal to ETI |
| 11. | 12-28-04 | Conspiracy | Clean Earth Disposal Proposal to RecTec |
| 12. | 12-28-04 | Conspiracy | McCambridge Fax to Tomicic regarding Clean Earth Disposal Proposal |
| 13. | 12-28-04 | Mail Fraud | ETI Check to RecTec for $327,000.00 |
| 14. | 12-28-04 | Wire Fraud | RecTec Wire Invoice to ETI for $314,792.00 |
| 15. | 12-29-04 | Mail Fraud | RecTec Check to Clean Earth for $318,750.00 |
| 16. | 12-31-04 | Wire Fraud | RecTec Wire Invoice to ETI for $74,326.73 |
| | **2005** | | |
| 17. | 1-04-05 | Conspiracy | McCambridge Fax to Tomicic regarding Next Steps for Atlas Park |
| 18. | 1-05-05 | Conspiracy | RecTec Environmental Services Agreement with Clean Earth |

[1] Each predicate act is typified based on reasonable beliefs of how the fraudulent material was transmitted.  Plaintiff reserves the right to amend the predicate act type categorizations if it is deemed necessary by discovery in the matter.

**Appendix A – Defendants' Predicate Acts Table**

| | | | |
|---|---|---|---|
| 19. | 1-07-05 | Wire Fraud; Conspiracy | ETI Wire Spreadsheet to RecTec regarding Prices to Charge ATCO |
| 20. | 1-07-05 | Mail Fraud | RecTec Check to Clean Earth for $19,125.00 |
| 21. | 1-10-05 | Mail Fraud | ETI Check to RecTec for $21,800.00 |
| 22. | 1-10-05 | Mail Fraud | RecTec Check to Clean Earth for $57,375.00 |
| 23. | 1-10-05 | Wire Fraud | RecTec Wire Invoice to ETI for $334,422.90 |
| 24. | 1-22-05 | Wire Fraud; Conspiracy | ETI Wire to Plaza of Change Estimate |
| 25. | 1-22-05 | Wire Fraud; Conspiracy | ETI Wire to Plaza of Change Estimate |
| 26. | 1-27-05 | Mail Fraud | ETI Check to RecTec for $90,000.00 |
| 27. | 1-28-05 | Mail Fraud | RecTec Check to Clean Earth for $79,475.84 |
| 28. | 2-02-05 | Wire Fraud; Conspiracy | ETI Wire to Plaza for Certification for Payment |
| 29. | 2-03-05 | Wire Fraud | RecTec Wire Invoice to ETI for $26,302.20 |
| 30. | 2-03-05 | Wire Fraud | RecTec Wire Invoice to ETI for $6,211.23 |
| 31. | 2-15-05 | Wire Fraud | RecTec Wire Invoice to ETI for $1,616.36 |
| 32. | 3-09-05 | Mail Fraud | ETI Check to RecTec for $22,500.00 |
| 33. | 3-25-05 | Wire Fraud; Conspiracy | ETI Wire to Plaza of Change Estimate |
| 34. | 4-12-05 | Mail Fraud | ETI Check to RecTec for $45,000.00 |
| 35. | 4-29-05 | Mail Fraud | ETI Check to RecTec for $7,500.00 |
| 36. | 4-30-05 | Wire Fraud; Conspiracy | ETI Wire to Plaza for Certification for Payment |
| 37. | 5-01-05 | Mail Fraud | ETI Check to RecTec for $7,500.00 |
| 38. | 5-01-05 | Wire Fraud | RecTec Wire Invoice to ETI for $7,630.00 |
| 39. | 5-03-05 | Mail Fraud | RecTec Check to Clean Earth for $5,995.00 |
| 40. | 5-25-05 | Mail Fraud | ETI Check to RecTec for $60,000.00 |
| 41. | 5-26-05 | Wire Fraud; Conspiracy | ETI Wire to Plaza for Certification for Payment |

**Appendix A – Defendants' Predicate Acts Table**

| | | | |
|---|---|---|---|
| 42. | 6-27-05 | Wire Fraud | RecTec Wire Invoice to ETI for $402.58 |
| 43. | 6-29-05 | Mail Fraud | ETI Check to RecTec for $9,000.00 |
| 44. | 7-11-05 | Wire Fraud | RecTec Wire Invoice to ETI for $9,660.06 |
| 45. | 7-18-05 | Wire Fraud | RecTec Wire Invoice to ETI for $2,617.74 |
| 46. | 7-28-05 | Mail Fraud | ETI Check to RecTec for $18,000.00 |
| 47. | 7-29-05 | Wire Fraud | RecTec Wire Invoice to ETI for $3,704.04 |
| 48. | 7-29-05 | Wire Fraud | RecTec Wire Invoice to ETI for $1,343.16 |
| 49. | 8-03-05 | Wire Fraud; Conspiracy | ETI Fax to ATCO regarding Explanation of RecTec Charges |
| 50. | 8-17-05 | Mail Fraud | ETI Check to RecTec for $15,300.00 |
| 51. | 8-30-05 | Wire Fraud | RecTec Wire Invoice to ETI for $2,628.45 |
| 52. | 8-30-05 | Wire Fraud | RecTec Wire Invoice to ETI for $4,143.98 |
| 53. | 8-30-05 | Wire Fraud | RecTec Wire Invoice to ETI for $1,900.00 |
| 54. | 8-31-05 | Mail Fraud | ETI Check to RecTec for $11,016.00 |
| 55. | 8-05 | Conspiracy | Tomicic August 2005 Employee Review |
| 56. | 9-08-05 | Wire Fraud; Conspiracy | ETI Wire to ATCO of Bogus Competitive Bids |
| 57. | 9-21-05 | Mail Fraud | ETI Check to RecTec for $6,000.00 |
| 58. | 9-29-05 | Mail Fraud | ETI Check to RecTec for $25,000.00 |
| 59. | 10-07-05 | Wire Fraud; Conspiracy | ETI Wire to Plaza of Change Estimate |
| 60. | 10-24-05 | Mail Fraud | ETI Check to RecTec for $36,000.00 |
| 61. | 11-03-05 | Mail Fraud | ETI Check to RecTec for $18,000.00 |
| 62. | 11-08-05 | Mail Fraud | ETI Check to RecTec for $11,888.77 |
| 63. | 11-09-05 | Mail Fraud | RecTec Check to Clean Earth for $8,298.01 |
| 64. | 12-08-05 | Mail Fraud | ETI Check to RecTec for $25,000.00 |
| | **2006** | | |
| 65. | 1-05-06 | Mail Fraud | ETI Check to RecTec for $18,000.00 |
| 66. | 3-08-06 | Conspiracy | Email McCambridge to Tomicic regarding RecTec's |

**Appendix A – Defendants' Predicate Acts Table**

|  |  |  | Purpose |
|---|---|---|---|
| 67. | 3-15-06 | Mail Fraud | ETI Check to RecTec for $5,375.00 |
| 68. | 3-24-06 | Mail Fraud | ETI Check to RecTec for $9,000.00 |
| 69. | 4-06-06 | Mail Fraud | ETI Check to RecTec for $23,000.00 |
| 70. | 4-13-06 | Mail Fraud | ETI Check to RecTec for $5,000.00 |
| 71. | 4-27-06 | Mail Fraud | ETI Check to RecTec for $5,375.00 |
| 72. | 5-10-06 | Mail Fraud | ETI Check to RecTec for $10,000.00 |
| 73. | 5-25-06 | Mail Fraud | ETI Check to RecTec for $10,000.00 |
| 74. | 6-01-06 | Mail Fraud | ETI Check to RecTec for $10,000.00 |
| 75. | 6-15-06 | Mail Fraud | ETI Check to RecTec for $15,000.00 |
| 76. | 6-26-06 | Mail Fraud | ETI Check to RecTec for $6,250.00 |
| 77. | 6-30-06 | Mail Fraud | ETI Check to RecTec for $10,000.00 |
| 78. | 7-20-06 | Mail Fraud | ETI Check to RecTec for $15,000.00 |
| 79. | 8-03-06 | Mail Fraud | ETI Check to RecTec for $8,000.00 |
| 80. | 8-10-06 | Mail Fraud | ETI Check to RecTec for $6,000.00 |
| 81. | 9-07-06 | Mail Fraud | ETI Check to RecTec for $10,000.00 |
| 82. | 9-21-06 | Mail Fraud | ETI Check to RecTec for $3,000.00 |
| 83. | 11-17-06 | Mail Fraud | ETI Check to RecTec for $3,530.37 |
|  | **2007** |  |  |
| 84. | 1-15-07 | Mail Fraud | ETI Check to RecTec for $2,833.10 |
| 85. | 1-31-07 | Mail Fraud | ETI Check to RecTec for $18,544.50 |
| 86. | 2-20-07 | Mail Fraud | ETI Check to RecTec for $21,243.60 |
| 87. | 3-20-07 | Mail Fraud | ETI Check to RecTec for $18,670.20 |

# Appendix B

## Appendix B – ATCO's Damages Caused by the Enterprise's Predicate Acts

- **Service Description**: Description of the Twelve Fraudulent Services provided by Clean Earth for which ATCO was damaged by the Enterprise Inflations on the direct cost invoices.

- **Direct Cost**: The direct costs, as billed by Clean Earth, of the Twelve Fraudulent Services. ETI's subcontract entailed their financial compensation for the ETI Project as the direct costs of the services provided with the addition of the 15% Markup.

- **RecTec Inflation**: The monetary inflations RecTec included on the direct costs for each of the Twelve Fraudulent Services. RecTec included these direct cost invoice inflations while providing no additional services.

- **15% Markup Damages**: The damages to ATCO created by the increase in ETI's 15% Markup due to the invoice inflations on the direct costs of the Twelve Fraudulent Services. Totaled by finding 15% of the RecTec Inflation.

- **21% Markup Damages**: The damages to ATCO created by the increase in Plaza's 21% Markup due to the invoice inflations on the direct costs of the Twelve Fraudulent Services. Totaled by finding 21% of the summation of the RecTec Inflation and the 15% Markup Damages.

- **Total Billed:** The total billed to ATCO on the Twelve Fraudulent Services. Totaled by finding what would have been charged to ATCO had the invoices for the Twelve Fraudulent Services not been inflated ((Direct cost multiplied by 15% allotted to ETI) multiplied by 21% allotted to Plaza) added to the Total Damages.

- **Total Damages**: The total monetary damages to ATCO for each of the Twelve Fraudulent Services. Totaled by adding the RecTec Inflation, the 15% Markup Damages, and the 21% Markup Damages.

## Appendix B – ATCO's Damages Caused by the Enterprise's Predicate Acts

| Service Description | Direct Cost | RecTec Inflation | 15% Markup Damages | 21% Markup Damages | Total Billed | Total Damages |
|---|---|---|---|---|---|---|
| Transport, Disposal, and Treatment D006 Bulk Soil | $379,701.38 | $269,513.52 | $40,427.03 | $65,087.52 | $903,382.54 | $375,028.06 |
| Transport, Disposal, and Treatment Non-Hazardous Petroleum Soil | $64,248.53 | $10,078.20 | $1,511.73 | $2,433.89 | $103,425.65 | $14,023.82 |
| Rental – 2 Roll-Offs – 40 Days | $1,000.00 | $400.00 | $60.00 | $96.60 | $1,948.10 | $556.60 |
| Rental – 4 Roll-Offs – 36 Days | $1,800.00 | $720.00 | $108.00 | $173.88 | $3,506.58 | $1,001.88 |
| Mobilization and Demobilization – 8 Roll-Offs | $5,400.00 | $2,160.00 | $324.00 | $521.64 | $10,519.74 | $3,005.64 |
| Processing Fee for Oversized Tank Disposal | $300.00 | $120.00 | $18.00 | $28.98 | $584.43 | $166.98 |
| Transport, Disposal, and Treatment Non-Hazardous Petroleum Soil | $22,312.50 | $3,500.00 | $525.00 | $845.25 | $35,918.09 | $4,870.25 |
| Drum Disposal | $1,200.00 | $480.00 | $72.00 | $115.92 | $2,337.72 | $667.92 |
| Transport, Disposal, and Treatment Non-Hazardous Lead | $6,375.00 | $1,000.00 | $150.00 | $241.50 | $10,262.31 | $1,391.50 |
| Transport, Disposal, and Treatment D006 Bulk Debris | $2,550.00 | $1,810.00 | $271.50 | $437.12 | $6,066.95 | $2,518.62 |
| Rental – 2 Roll-Offs – 60 Days | $1,500.00 | $600.00 | $90.00 | $144.90 | $2,922.15 | $834.90 |
| Mobilization and Demobilization – 8 Roll-Offs | $1,800.00 | $720.00 | $108.00 | $173.88 | $3,506.58 | $1,001.88 |
| **Totals** | $488,187.41 | $291,101.72 | $43,665.26 | $70,301.06 | $1,084,380.82 | $405,068.04 |