UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

THE HEMMERDINGER CORPORATION, d/b/a :
ATCO,                                    :
                                         :          DECISION AND ORDER
                    Plaintiff,           :          12-cv-2650 (WFK) (VMS)
                                         :
        -against-                        :
                                         :
FRANK M. RUOCCO, JR., BORIS A. TOMICIC,  :
WILLIAM S. McCAMBRIDGE, EARTH            :
TECHNOLOGY, INC., and RECYCLE            :
TECHNOLOGY, LLC,                         :
                                         :
                    Defendants.          :

-----------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

By complaint filed May 25, 2012, Plaintiff Hemmerdinger Corporation, d/b/a ATCO

("Plaintiff" or "ATCO") alleges Frank M. Ruocco, Jr., Boris A. Tomicic, William S.

McCambridge, Earth Technology, Inc. ("ETI"), and Recycle Technology, LLC ("RecTec")

(collectively "Defendants" or "the Enterprise") violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and committed fraud by inflating

bills for Defendants' provision of soil excavation and soil remediation services. Plaintiff

specifically alleges Defendants conspired to fraudulently inflate invoices for the direct cost of

disposal of certain polluted materials, beginning as early as May 26, 2004, which fraudulent

inflations purportedly damaged Plaintiff by at least $405,068.04. Defendants Ruocco, Tomicic,

and ETI move to dismiss these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure on the grounds that Plaintiff's claims are time-barred and that Plaintiff has failed to

state a civil RICO claim. Defendant McCambridge, acting *pro se*, separately moves to dismiss

1

on unspecified grounds. For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff ATCO is a family-owned real estate development firm headquartered in New York, New York, with a second office in Queens, New York. Compl. at ¶¶ 1–2, 27. In mid-2004, Plaintiff employed general contractor Plaza Construction Corporation ("Plaza") to build a shopping center ("Atlas Park") in Glendale, Queens. *Id.* at ¶ 2. On September 2, 2004, Plaza subcontracted the soil excavation and soil remediation work at Atlas Park ("the ETI Project") to Defendant Frank Ruocco's company, ETI, which the complaint describes as "a site development and environmental services company based in North Haven, Connecticut." *Id.* at ¶¶ 3, 45. ETI's project manager, Defendant Boris Tomicic, was in charge of overseeing the ETI Project at Atlas Park. *Id.* at ¶ 3. Ruocco and Tomicic are both domiciled in Connecticut. *Id.* at ¶¶ 28, 29.

ETI's subcontract with Plaza entitled ETI to bill for the "direct cost" of its soil excavation and soil remediation work, plus 15% in additional financial compensation, which markup was allotted to ETI to cover overhead, supervision, tools, and profit. *Id.* at ¶ 4. ETI submitted these invoices via Plaza to Plaintiff, who in turn paid ETI the amount owed on these invoices, between late 2004 and 2005. *Id.* at ¶¶ 6, 9; Compl. Ex. 18 ("Defendants' Predicate Acts Table") (multiple acts identified as "ETI Wire to Plaza for Certification for Payment," dated from Feb. 2, 2005 through May 26, 2005). The complaint alleges Ruocco and Tomicic conspired with Defendant William McCambridge and McCambridge's company RecTec to route these direct cost invoices through RecTec to inflate portions of ETI's bills (the "Enterprise Inflations"). *Id.* at ¶¶ 5–6, 41. McCambridge is alleged to be domiciled in Massachusetts. *Id.* at 30.

2

RecTec was incorporated as a limited liability corporation in Massachusetts with McCambridge as its manager on May 5, 2004. *Id.* at ¶ 41. On November 24, 2004, McCambridge, joined by ETI's Ruocco and Tomicic, signed RecTec's private operation and equity agreement; each agreed to share in the company's equity and profits. *Id.* at ¶¶ 43, 52. Specifically, the complaint alleges RecTec received six wire transfers from SRS, another company managed by Ruocco, for $425,000 in start-up funds. *Id.* at ¶ 42. SRS was dissolved on December 31, 2004, one month after the final wire transfer to RecTec. *Id.* The complaint describes RecTec as "a contaminated fuel disposal, soil disposal, and recycling company," which was allegedly "secretly funded by Ruocco, and which provided absolutely nothing of value to ATCO." *Id.* at ¶¶ 5–6. Rather, the complaint alleges, "the sole reason for the inclusion of [McCambridge's] company, RecTec, in the ETI Project at Atlas Park was to provide a company through which direct cost invoices could be routed in support of the Enterprise Inflations." *Id.* at ¶ 7. In other words, RecTec "provided no services whatsoever to ATCO or the Atlas Park project." Plaintiff's Mem. of Law in Opp'n to Defs. Ruocco, Tomicic, and ETI's Mot. to Dismiss ("Pl.'s Opp. Br.") at 3–4 (citing Compl. at ¶¶ 5, 48, 60, 78).

As one example of the Enterprise's scheme, Plaintiff alleges RecTec and McCambridge inflated the direct costs of services provided by nonparty Clean Earth of New Jersey ("Clean Earth"). Compl. at ¶ 8. Clean Earth provided the ETI Project with at least twelve transportation and disposal services, which generated direct cost invoices for the Atlas Park project. *Id.* ETI allegedly routed costs submitted by Clean Earth through RecTec, which in turn inflated those costs, before submitting the inflated direct cost invoices to Plaintiff. *Id.*

According to Plaintiff, the Enterprise Inflations went unnoticed for four reasons. First, Tomicic submitted misleading budget prices to Plaintiff for the estimated direct costs, leading

3

Plaintiff to expect a higher end price before the invoices were generated. *Id.* at ¶ 10. Second, because Plaintiff was aware that disposing of hazardous and contaminated soil could significantly increase costs, Plaintiff was more susceptible to trusting ETI's misleading budget prices. *Id.* at ¶¶ 11, 46, 71–72. Third, Defendants created fraudulent "back-up documentation" to support the misleading budget prices and support the higher end costs, including forged competitive bids, which were fabricated to create the illusion that RecTec had offered the lowest cost services. *Id.* at ¶¶ 12, 69. And, finally, Defendants took advantage of the "bustling atmosphere" within the "roughly $200 million development project" to conceal their fraudulent invoices. *Id.* at ¶ 13.

On June 4, 2008, roughly three years after the last of the ETI Project invoices was submitted, Plaintiff's environmental lawyer, Linda Shaw, had a conversation with Environmental Protection Agency ("EPA") Criminal Investigator Thomas Rudman ("Rudman") about ETI's invoices on the Atlas Park project. *Id.* at ¶¶ 9, 17, 35, 57; *see also* Compl. Ex. 17 (Notice of Claim, dated June 5, 2008). Ms. Shaw reported that Rudman "explained that EPA is in the process of investigating ETI due to potential improper billing practices." Compl. Ex. 17 at 2. She went on to note that Rudman "did understand the concern that civil liability could attach to Atlas Park if ETI did in fact take any material to an improper location, but added EPA had no current evidence that the hazardous lead waste material removed from the Atlas site had gone to an improper facility." *Id.* Ms. Shaw also reported that Rudman had issued a federal Grand Jury subpoena for Atlas Park to either testify before a Grand Jury in Boston, Massachusetts or produce any and all materials in its possession with respect to ETI. *Id.* Ms. Shaw did not report whether Rudman had identified which individuals or other businesses, besides ETI, were the targets of this investigation.

Roughly one year after this conversation, on July 7, 2009, McCambridge pleaded guilty to a one-count Information charging him with conspiracy to commit wire fraud. Compl. at ¶ 18. McCambridge specifically admitted that he "willfully and corruptly conspired to execute and attempt to execute a scheme and artifice to defraud a property developer [ATCO] out of money and property by means of interstate wire communications." *Id.* (quoting Compl. Ex. 1 (McCambridge Plea Agreement)) (brackets in the original). By August 17, 2009, ATCO had created a Victim Impact Statement in connection with the charges against McCambridge. Compl. at ¶ 17.

Tomicic, Ruocco, and ETI were indicted on September 16, 2009 for their roles in the scheme to submit fraudulent invoices to ATCO. Compl. at ¶¶ 19, 20; *see also* Compl. Ex. 3 (Grand Jury Indictment against Ruocco, Tomicic, and ETI, dated Sept. 16, 2009). At trial, Tomicic was convicted of wire fraud for his transmission of forged competitive bids by facsimile. Compl. at ¶ 19. Ruocco and ETI were not convicted, the jury concluding the evidence did not prove their guilt beyond a reasonable doubt. *Id.* at ¶ 20.

Despite their acquittal, Plaintiff alleges "it is readily apparent that Ruocco and ETI directed and managed the fraudulent actions taken by the Enterprise to defraud property developer ATCO out of hundreds of thousands of dollars." *Id.* Plaintiff refers, *inter alia*, to a 2006 guilty plea by a previously Ruocco-owned company, Earth Technology II ("ETI II"), for mail fraud related to inflating direct cost invoices submitted to customers at an environmental remediation site in Connecticut. *Id.* at ¶ 21.

Based on the foregoing facts, Plaintiff asserts causes of action for common law fraud and for violation of RICO Sections 1962(c) and (d). Plaintiff seeks $405,068.04 in compensatory damages plus treble damages, costs, and fees. *Id.* at ¶¶ 22–23.

5

## DISCUSSION

### I.   Standard of Law

To survive a motion to dismiss pursuant to Rule 12(b)(6), each claim must set forth sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  At this stage, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff, the non-movant.  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  However, the Court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks and alteration omitted).

When determining the sufficiency of a claim under Rule 12(b)(6), the Court may consider only the allegations on the face of a pleading.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Nevertheless, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id*; *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").  The Court may consider documents outside of the pleading if the documents are integral to the pleading or subject to judicial notice.  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).  In a civil RICO case such as this, the Court may in particular consider the facts and allegations contained in the supplemental RICO case statement.  *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir. 1992)

("In analyzing the issues on this motion to dismiss, we must take as true the facts as alleged in the complaint and as supplemented by the RICO case statement ordered by the district court.").

Defendants argue this Court should apply a higher standard to evaluate the sufficiency of Plaintiff's RICO claims. *See* Defs.' Br. at 5. It is true "courts have an obligation to scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Am. Fed'n of State, Cnty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 12 Civ. 2238, 2013 WL 2391999, at *4 (S.D.N.Y. June 3, 2013) (Oetken, J.) (internal editing omitted). However, the RICO statute is intended to be "liberally construed to effectuate its remedial purposes," *id.* (citing *United States v. Boyle*, 556 U.S. 938, 947 (2009)), and this Court will so construe it.

## II.    Statutes of Limitations

Defendants move to dismiss Plaintiff's action, which was filed May 25, 2012, as barred by the statutes of limitations governing claims for fraud and RICO. For the reasons discussed below, Defendants' motion to dismiss Plaintiff's claims as time-barred is granted in part and denied in part.

### A. Plaintiff's Claim of Fraud Against Defendants Ruocco, ETI, and RecTec is Barred by the Statute of Limitations

This Court has diversity jurisdiction over Plaintiff's common law fraud claim pursuant to 28 U.S.C. § 1332(a). "Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). "Under New York law, a claim for fraud must be commenced either within six years from the commission of the fraud or

7

within two years from the date that the fraud was discovered, or could reasonably be discovered, whichever is later." *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (citing N.Y. C.P.L.R. §§ 203(g), 213(8)). Under N.Y. C.P.L.R. § 213(8), "the six year prong of this limitations period begins to run from the time that a plaintiff actually suffers a loss as a result of the fraudulent conduct." *Lenz v. Associated Inns and Restaurants Co. of Am.*, 833 F. Supp. 362, 370 (S.D.N.Y. 1993) (Conboy, J.). In the instant case, Defendant submitted allegedly fraudulent invoices to Plaintiff, which Plaintiff paid to its purported detriment, in 2005, at the latest. Compl. at ¶ 9 ("ATCO had end responsibility to pay these invoices, and did so. From 2004 to 2005, ATCO overpaid by an amount of at least $405,068.04."). Accordingly, the six-year limitations period expired in 2011—prior to the filing of this action in 2012. *See, e.g.*, *Stull v. Bayard*, 561 F.2d 429, 431–32 (2d Cir. 1977) (holding the six-year limitations period provided by N.Y. C.P.L.R. § 203 begins to run "when the plaintiff suffers a loss as a result" of the most recent wrongful act alleged). "The court, then, must focus on the two year limitations period, which runs from the moment that plaintiff had actual knowledge of the fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Lenz*, 833 F. Supp. at 370 (internal quotation marks and citation omitted).

"The plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action." *Guilbert*, 480 F.3d at 147. A plaintiff's duty to inquire "is triggered by information that relates directly to the misrepresentations and omissions the Plaintiff[] later allege[s] in [its] action against the defendants." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (internal quotation marks and citation omitted). Mere suspicion will not suffice; rather, a plaintiff must have "knowledge of the fraudulent act." *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532, 881

8

N.Y.S.2d 651, 654 (N.Y. 2009). "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts." *Id.* However, "[t]he triggering information need not detail every aspect of the subsequently alleged fraudulent scheme," and "the date on which knowledge of a fraud will be imputed to a plaintiff can depend on the plaintiff's investigative efforts." *Cohen*, 711 F.3d at 361 (internal quotation marks and editing omitted). Therefore, "[i]f the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose." *Id.* (internal quotation marks and citation omitted).

The complaint alleges "[s]ometime between the initial contact in June 2008 and the creation of a Victim Impact Statement on August 17, 2009, ATCO learned of the fraud the Enterprise committed against it." Compl. at ¶ 58. Likewise, in its Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Plaintiff provides a range of possible inquiry notice dates, asserting, "Plaintiff did not discover, and could not have reasonably discovered, that its damages were attributable to fraud until, at the earliest, sometime between June 4, 2008 and August 17, 2009." Pl.'s Opp. Br. at 8. The Court agrees that Plaintiff's duty to inquire probably arose on the date of Ms. Shaw's conversation with Rudman on June 4, 2008 about "improper billing practices" by ETI. Compl. Ex. 17 at 2. *See, e.g.*, *Zola v. Gordon*, 685 F. Supp. 354, 368, *on reargument*, 701 F. Supp. 66, 67–68 (S.D.N.Y. 1988) (Conboy, J.) (holding plaintiffs' duty to inquire was "triggered by receipt of [an] IRS report," which plaintiffs failed to investigate, rendering irrelevant defendant's acts of concealment subsequent to plaintiffs' receipt of the report). However, even accepting the later of Plaintiff's asserted dates of inquiry notice, this claim was not timely filed. Accepting Plaintiff discovered knowledge of facts from which fraud

could reasonably be inferred on August 17, 2009, then the two-year limitations period expired on

August 17, 2011—approximately nine months before this action was commenced on May 25,

2012.  Therefore, Plaintiff's claim of fraud against Defendants Ruocco, ETI, and RecTec is

dismissed with prejudice.

### B.  Plaintiff's Claim of Fraud Against Defendants Tomicic and McCambridge May Proceed as Timely

As to Defendants Tomicic and McCambridge, Plaintiff argues N.Y. C.P.L.R. § 213-B

extends the statute of limitations for common law fraud to seven years.  Pl.'s Opp. Br. at 9.

Section 213-B provides, in relevant part, "an action by a crime victim . . . may be commenced to

recover damages from a defendant:  (1) convicted of a crime which is the subject of such action,

for any injury or loss resulting therefrom within seven years of the date of the crime."  N.Y.

C.P.L.R. § 213-B.  New York courts have broadly construed this provision to cover victims of

any crimes committed in New York, regardless of where the crime was prosecuted and whether

or not the crime was a felony.  *See, e.g.*, *Elkin v. Cassarino*, 248 A.D.2d 35, 39, 680 N.Y.S.2d

601, 604 (N.Y. App. Div. 2d Dep't 1998) ("[I]t is clear . . . that CPLR 213-b was intended to be

expansive.").  There is no dispute that Tomicic and McCambridge were convicted of wire fraud.

For the reasons that follow, Plaintiff's fraud claim against Defendants Tomicic and

McCambridge is timely.

Defendant McCambridge does not dispute Plaintiff's argument that N.Y. C.P.L.R. § 213-

B should be applied to extend the statute of limitations for Plaintiff's claim of fraud against him.

Moreover, it is clear from McCambridge's plea agreement that he pleaded guilty to a crime that

is the subject of the instant action, from which Plaintiff has allegedly suffered injury or loss

resulting therefrom.  *See, e.g.*, *Elkin*, 248 A.D.2d at 36–37, 41, 680 N.Y.S.2d at 602, 605

(extending statute of limitations against civil defendant in action for assault and conversion, which "arose out of the same event and occurrence as formed the basis of the defendant's Federal criminal convictions" for robbery); *cf. Boice v. Burnett*, 245 A.D.2d 980, 981, 667 N.Y.S.2d 100, 101 (N.Y. App. Div. 3d Dep't 1997) (declining to extend statute of limitations, holding defendant's crime of tax evasion did not injure plaintiffs, who had been named in false statements about business deductions made on defendant's tax forms).  McCambridge specifically admitted that he "willfully and corruptly conspired to execute and attempt to execute a scheme and artifice to defraud a property developer [ATCO] out of money and property by means of interstate wire communications," "from approximately December 2004 through at least March 2007."  Compl. at ¶ 18 (brackets in original) (quoting Compl. Ex. 1 (McCambridge Plea Agreement)).  This allocution directly relates to Plaintiff's instant action and the injuries alleged herein.  *See* Compl. at ¶ 9.  Accordingly, pursuant to N.Y. C.P.L.R. § 213-B, Plaintiff's claim for fraud against McCambridge will not expire until at least March 2014, seven years after the fraud concluded, and its claim was therefore timely filed in May 2012.  *See Stull*, 561 F.2d at 431, n.2 (noting that limitations periods are calculated "from the last wrongful act committed by defendants" and implicitly rejecting proposal for "an outside cut-off period," which would exclude earlier acts comprising the same violation).

Defendant Tomicic, by contrast, disputes that N.Y. C.P.L.R. § 213-B should be applied to extend the statute of limitations for Plaintiff's claim of fraud against him.  Defs.' Reply Br. at 2–3.  Specifically, Defendant Tomicic argues Plaintiff did not allege a direct injury resulting from the crime for which Tomicic was convicted because Plaintiff suffered its injury when it paid allegedly fraudulent invoices in 2004 and 2005, whereas Defendant Tomicic was convicted based on his transmission of a single facsimile sent in September 2005.  *Id.*  It is undisputed that

11

Tomicic was convicted of one count of wire fraud, which was charged in connection with a conspiracy to defraud Plaintiff from approximately November 2004 through March 2007. Compl. Ex. 3 at 12. Although Tomicic was not convicted of that conspiracy as a whole, the charge against him specified that the September 8, 2005 facsimile was transmitted "[f]or the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud" Plaintiff ATCO. *Id.* Therefore, this Court will not conclude as a matter of law that Plaintiff was not injured as a result of Tomicic's wire fraud. It is clear Plaintiff's alleged injury "arose out of the same event and occurrence as formed the basis of the defendant's Federal criminal conviction[]" for wire fraud. *Elkin*, 248 A.D.2d at 36–37, 680 N.Y.S.2d at 602. Accordingly, the statute of limitations for Plaintiff's claim for fraud against Tomicic was timely filed in May 2012—within seven years of the crime committed in September 2005—and that cause of action may proceed against him.

### C. Statute of Limitations for RICO

"RICO actions are subject to a four year statute of limitations. . . . [T]he date the statute of limitations begins to run is governed by federal law." *Zola*, 685 F. Supp. at 372 (internal citations omitted). The limitations period "begins to run when the plaintiff discovers or should have discovered the RICO injury." *Cohen*, 711 F.3d at 361 (internal quotation marks omitted); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988). Thus, the standard for determining when a Plaintiff is on inquiry notice sufficient to trigger the statute of limitations for a civil RICO claim is similar to that for fraud under New York law. *Cohen*, 711 F.3d at 361.

Defendants points to various facts, which they claim put Plaintiffs on inquiry notice as early as 2005. Defs.' Br. at 12–15. For example, Defendants argue Plaintiff was on notice of the fraud because Plaintiff submitted an insurance claim for "unanticipated costs associated with the

disposal of the lead contaminated soil" and because one of its employees complained in 2005 of

ETI's "high" and "excessive" invoices. *Id.* at 12–13. The Court disagrees with these assertions

because neither demonstrates Plaintiff's awareness of "information that relates directly to the

misrepresentations and omissions the Plaintiff[] later allege[s] in [its] action against the

defendants." *Cohen*, 711 F.3d at 361 (internal quotation marks omitted). Rather, the insurance

claim and employee complaint demonstrate, at most, suspicion of possible fraud, which is

insufficient to trigger inquiry notice, without more. *See e.g.*, *Sargiss*, 12 N.Y.3d at 532,

N.Y.S.2d at 654; *see also Fisher v. Reich*, 92 Civ. 4158, 1995 WL 23966, at *6 (S.D.N.Y. Jan.

10, 1995) (Mukasey, J.) ("[A]wareness of risks does not suggest knowledge of fraud.  Summary

judgment on the issue of inquiry notice is warranted only if the record unambiguously proves

plaintiff was placed on notice of the probability of injury.").

It is well settled that "inquiry notice imposes an obligation of reasonable diligence."

*Cohen*, 711 F.3d at 362.  Even assuming Plaintiff's awareness of information in 2005 should

have made it suspicious of more serious fraud, which "trigger[ed] a duty to inquire, it does not

follow that [Plaintiff] was chargeable with awareness of" the fraud itself or knowledge from

which fraud could have reasonably been discovered. *Id.* at 362–63 (holding plaintiff's suspicion

in 1991 that defendant had been concealing misrepresentations did not trigger inquiry notice

where plaintiff did not discover court records confirming her suspicions until years later).  Here,

in response to its 2005 suspicions, Plaintiff requested competitive bids to verify ETI's seemingly

excessive invoices, which Defendant provided in September 2005. *See* Defs.' Br. at 13.  These

competitive bids, later proven to be fraudulent, did not reveal any information from which the

Enterprise Inflations could have reasonably been discovered.  That one of those bids, the "WTS

Bid," misrepresented publicly available information about a proposed Senate bill does not

impute further knowledge on Plaintiff. *See, e.g., Cohen*, 711 F.3d at 363 (rejecting argument that public availability of court records revealing misrepresentations triggered inquiry notice because "[t]here [was] no indication that the suit received any publicity, or that it resulted in published or broadly disseminated opinions") (internal editing and quotation marks omitted). This is particularly true where, as here, the fraudulent bid was stamped and dated accurately and was printed on WTS letterhead, such that "it did not put ATCO on notice of Defendants' larger fraud." *See* Pl.'s Opp. Br. at 14–16. Faced with such a seemingly authentic submission, Plaintiff's duty to reasonably investigate did not require it to continue to pursue some possible, lingering suspicion of fraud. Defendants have not shown, nor is the Court aware of, any "adequate reason on this record to conclude that . . . further reasonable diligence would have revealed" information from which Plaintiff could have discovered the fraud in 2005. *Cohen*, 711 F.3d at 362–63. Accordingly, neither the insurance claim nor the ETI employee's concerns put Plaintiff on inquiry notice.

Defendants separately argue that "the well-publicized guilty plea of an alleged 'Ruocco-owned company' [ETI II] with essentially the same name as ETI" in 2006 must have put Plaintiff on inquiry notice of its civil RICO claim as early as 2006. Defs.' Br. at 14. To the contrary, ETI II's "well-publicized" guilty plea in 2006 did not "relate[] directly to the misrepresentations and omissions" herein alleged against the Defendants in this case. Indeed, the 2006 plea involved a separate and distinct company and a separate and distinct construction project, which Plaintiff was not even indirectly involved in. *Cohen*, 711 F.3d at 361. Therefore, this information also did not impute knowledge on Plaintiff.

As discussed, *supra*, absent evidence to the contrary, the Court accepts Plaintiff's representation that it "did not discover, and could not have reasonably discovered, that its

damages were attributable to fraud until, at the earliest, sometime between June 4, 2008 and August 17, 2009." Compl. at ¶ 58; Pl.'s Opp. Br. at 8; *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) ("Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, the complaint should not be dismissed on motion and the question should be left to the trier of fact.") (citation omitted). Accepting Plaintiff's assertions as true, Plaintiff's RICO claim expired sometime between June 4, 2012 and August 17, 2013. The Court need not resolve which date triggered Plaintiff's duty to inquire because, under any alleged scenario, Plaintiff's RICO claim, filed May 25, 2012, is timely. Defendants' motion to dismiss Plaintiff's RICO claim as untimely is denied.

## III.    Failure to State a Claim for RICO

Defendants separately move to dismiss Plaintiff's civil RICO claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion is denied.

### A. Failure to State a Claim for RICO Section 1962(c)

Plaintiff alleges Defendants violated Section 1962(c) of Title 18 of the United States Code ("Section 1962(c)"), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

To state a claim under Section 1962(c), Plaintiff must allege facts tending to prove four separate elements. "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Defendants argue Plaintiff's Section 1962(c) claim fails on two separate grounds. First, Defendants argue Plaintiff "fails to allege an association-in-fact enterprise that is separate and apart from the alleged RICO activity." Defs.' Br. at 16–18; *see also United States v. Turkette*, 452 U.S. 576, 583 (1981) (defining a RICO "enterprise" as "an entity separate and apart from the pattern of activity in which it engages"). Second, Defendants argue Plaintiff fails to allege continuity—either open- or close-ended—sufficient to properly plead a pattern of racketeering activity. Defs.' Br. at 18–21; *see also H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–42 (1989). The Court will address each argument in turn.

## 1.  Plaintiff Adequately Pleads an "Association in Fact" Enterprise

To state a claim under Section 1962(c), Plaintiff must allege an enterprise, which "is defined to include 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *United States v. Errico*, 635 F.2d 152, 155 (2d Cir. 1980) (quoting 18 U.S.C. § 1961(4)). It is well established that the alleged entity must be "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583; *see also City of New York v. Chavez*, 11 Civ. 2691, 2013 WL 1966049, at *6 (S.D.N.Y. May 13, 2013) (Forrest, J.) ("[T]he enterprise must also have some element of existence beyond the predicate acts committed."). The definition of "enterprise," for RICO purposes, has long been mired in obscurity. Southern District Judge Katherine Forrest recently endeavored to illuminate the term "enterprise" by compiling the most relevant authorities and, ultimately, generating the following list of defining characteristics:

> [A]n "enterprise" must have "ongoing organization"; the enterprise must "function as a continuing unit"; it must "have a common purpose of engaging in a course of conduct"; its members must be in certain ways

16

"dependent" on one another; its members must be in certain ways "joined together as a group"; its members must act in certain ways "to benefit" one another; its members must contribute to the association's goals and purposes in some "necessary and symbiotic" manner; [and] its members' activities must in some manner "rely" on other members' activities.

*Chavez*, 2013 WL 1966049 at *11 (citations omitted). Judge Forrest distilled these requirements to "a simply-stated distinction: If each act of fraud is equally effective without the perpetration of any other act of fraud—even if perhaps effective to a far lesser or different magnitude—then there is no RICO enterprise. If each act of fraud is not effective without the other acts of fraud, then a RICO enterprise exists." *Id.* Thus, it follows that while the enterprise must be separate from the pattern of racketeering activity alleged, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce." *Boyle*, 556 U.S. at 947 (internal quotation marks omitted). In other words, the enterprise "is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." *Id.* at 951.

In addition to the separateness characteristic of any RICO enterprise, an association-in-fact enterprise includes additional, more specific structural characteristics. "[A]n association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* at 946 (quoting *Turkette*, 452 U.S. at 583). An association-in-fact enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*; *see also McGee v. State Farm Mut. Auto Ins. Co.*, No. 08-CV-392, 2009 WL 2132439, at *4 n.7 (E.D.N.Y. July 10, 2009) (Block, J.) (noting "*Boyle* establishes a low threshold for pleading such an enterprise"). Thus, for RICO purposes, an association-in-fact "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the

17

various associates function as a continuing unit." *Boyle*, 556 U.S. at 945.  Moreover, as is true of enterprises generally, "proof of a pattern of racketeering activity may be sufficient in a particular case to permit the factfinder to infer the existence of an association-in-fact enterprise." *Chavez*, 2013 WL 1966049, at *6 (quoting *Boyle*, 556 at 951) (internal editing omitted).  The enterprise may be formed "solely for the purpose of carrying out a pattern of racketeering acts," so long as it embodies the requisite structure to make it an enterprise. *Boyle*, 556 U.S. at 942 (citation omitted), 951.

Plaintiff here alleges Defendants formed an "association in fact" enterprise with a stated purpose "to provide customers with soil remediation and site redevelopment services."  Compl. Att. 3 ("RICO Case Statement"), at 23–24.  By contrast, Defendants characterize Plaintiff's enterprise allegation as a "business relationship whereby Ruocco provided start-up funds for RecTec, Tomicic and Ruocco through ETI and McCambridge through RecTec conspired to inflate and inflated direct cost invoices for certain portions of the ETI Project." Defs.' Br. at 16 (quoting Compl. at ¶ 79).  Defendants thus argue that Plaintiff has failed to allege a separate enterprise because the "Complaint does not allege a single purpose of the alleged enterprise other than performing the alleged racketeering activities to purportedly defraud Plaintiff for this one construction project." *Id.* at ¶ 18.

Defendant mischaracterizes Plaintiff's allegation that Defendants' enterprise was "created *solely* to defraud plaintiff." Defs.' Br. at 17 (emphasis in original).  While Defendants' intent to defraud Plaintiff is central to Plaintiff's allegations about the Enterprise, Plaintiff clearly also alleges—and Defendants do not dispute—that Defendants formed a relationship "to provide customers with soil remediation and site redevelopment services."  RICO Case Statement at 24. More importantly, Plaintiff alleges "numerous facts demonstrating how [the] Defendants

18

functioned as continuing units with common purposes." *Allstate Ins. Co. v. Etienne*, No. 09-CV-3582, 2010 WL 4338333, at *6 (E.D.N.Y. Oct. 26, 2010) (Townes, J.).  For example, Plaintiff alleges that on September 2, 2004, its general contractor, Plaza, subcontracted the soil excavation and soil remediation work at Atlas Park to ETI, a company managed by Ruocco; Tomicic, ETI's project manager for the Atlas Park contract, in turn engaged RecTec, a company managed by McCambridge.  Compl. at ¶¶ 41, 45, 47.  RecTec, meanwhile, had been recently incorporated on May 5, 2004, and received start-up funds from SRS, another company managed by Ruocco, between May and December 2004—during the same period when ETI was engaged by Plaza on Plaintiff's behalf.  *Id.* at ¶¶ 7, 32, 41, 42, 45.  Defendant ETI submitted allegedly fraudulent inflated invoices and forged competitive bids to Plaintiff, at least some of which passed through RecTec, until September 8, 2005—sixteen months from the date of RecTec's incorporation.  *See* Defs.' Predicate Acts Table; Compl. at ¶¶ 5–6.

Thus, Plaintiff alleges a series of employment and contractual relationships between the Defendants, who shared a common purpose to defraud Plaintiff by inflating direct cost invoices, and whose relationship lasted well over a year.  These allegations satisfy the three structural requirements laid out in *Boyle* to establish an association-in-fact enterprise:  (1) "a purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle*, 556 U.S. at 946.

## 2.  Plaintiff Adequately Pleads Continuity

To state a claim under Section 1962(c), Plaintiff must also allege a pattern of racketeering activity, which is defined as "at least two acts of racketeering activity . . . within ten years . . . after the commission of a prior act of racketeering activity."  *Lorber v. Winston*, No. 12-CV-3571, 2013 WL 3424173, at *18 (E.D.N.Y. July 3, 2013) (Spatt, J.) (quoting 18 U.S.C. §

1961(5)).  In *H.J., Inc. v. Northwestern Bell Tel. Co.*, the Supreme Court clarified the pattern

requirement as one that requires continuity, which may be either closed- or open-ended.  492

U.S. at 241.  Closed-ended continuity refers to "a closed period of repeated conduct," whereas

open-ended continuity refers to "past conduct that by its nature projects into the future with a

threat of repetition."  *Id.*  To allege closed-ended continuity, Plaintiff must allege "a series of

related predicates extending over a substantial period of time."  *Id.* at 242.  To allege open-ended

continuity, Plaintiff must allege "a threat of continued racketeering activity."  *Id.*  Under either

test, continuity is "centrally a temporal concept," which "depends on the specific facts of each

case."  *Id.* at 242.

   The law is clear that "the duration of a pattern of racketeering activity is measured by the

RICO predicate acts the defendants commit."  *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*,

187 F.3d 229, 243 (2d Cir. 1999).  "RICO defines 'racketeering activity' to include a host of

criminal offenses, which are in turn defined by federal and state law."  *Id.* at 242 (citing 18

U.S.C. § 1961(1)).  However, "[o]rdinary theft offenses and conspiracies to commit them are not

among the predicate activities defined in 18 U.S.C. § 1961(1)."  *Spool v. World Child Int'l*

*Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008); *see also Cofacrèdit*, 187 F.3d at 243

("Purely intrastate communication is beyond the [RICO] statute's reach.") (internal citations,

quotation marks, and editing omitted).

   In *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., Inc.*, the Second Circuit commented

that it "has never held a period of less than two years to constitute a 'substantial period of time'"

sufficient to establish closed-ended continuity.  187 F.3d at 242.  More recently, the Second

Circuit clarified that it has "not viewed two years as a bright-line requirement," although "it will

20

be rare that conduct persisting for a shorter period of time establishes closed-ended continuity."

*Spool*, 520 F.3d at 184.

In this case, Plaintiff has alleged a series of predicate acts beginning on May 26, 2004

and continuing until March 20, 2007—two months shy of a three-year duration. *See generally*

Defs.' Predicate Acts Table. Defendants argue this duration is misleading because the acts

alleged to have continued into 2007—namely "mail fraud" committed by check transfers from

Defendant ETI to Defendant and co-conspirator RecTec—do not amount to "predicate acts"

within the meaning of the statute. *See* Defs.' Br. at 19–20; Defs.' Predicate Acts Table.

Specifically, Defendants argue that "post-misappropriation . . . money transfers cannot be

considered as predicate acts by the Court in determining continuity." *Id.* (citing, *inter alia*,

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 511 (S.D.N.Y. 2007)

(Karas, J.), *aff'd*, 328 F. App'x 695 (2d Cir. 2009)).

Defendants mischaracterize the very general principle that post-misappropriation sales,

payments, or other money transfers constitute merely continued control and receipt of income,

which should not reasonably be taken to expand finite schemes into continuous criminal

conspiracies. *Id.* (citing, *inter alia*, *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 76

(S.D.N.Y. 1995) (Scheindlin, J.)); *see also Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*,

863 F. Supp. 447, 460 (E.D. Mich. 1994) (Rosen, J.) ("When the Supreme Court spoke of the

threat of repetition, it was referring to the threat of repeated *victimization* . . . , not merely

retention of ill-gotten fruits of previous crimes."). Rather, where the alleged predicate acts are

"designed to prevent detection and prosecution of the organization's illegal activities" and are

"part of a consistent pattern," such that they are "done in furtherance of the main criminal

objectives of [a] conspiracy," they may be considered predicate acts for purposes of RICO. *See*

21

*United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991); *World Wide Wrestling*, 530 F. Supp. 2d at 512 (internal quotation marks omitted).

In this case, there is evidence that mail fraud was part of a consistent series of acts done in furtherance of the main criminal objectives of the conspiracy to defraud ATCO. Counts Two and Three of the Indictment against Defendants Tomicic, Ruocco, and ETI characterize as mail fraud, in furtherance of a criminal conspiracy, post office deposits and deliveries of checks from ETI made payable to RecTec, in violation of 18 U.S.C. §§ 1341 and 1342. Compl. Ex. 3 at 12. The predicate acts alleged in the instant complaint are similarly described as acts of mail fraud in which ETI mailed checks made payable to RecTec. Defs.' Predicate Acts Table. Although the acts of mail fraud alleged in the Indictment were specifically alleged to have taken place in 2004, the acts are of the same kind and character as those alleged in the civil action and, moreover, Defendants Tomicic, Ruocco, and ETI were indicted on charges alleging a criminal conspiracy that continued "to at least . . . March 2007." Compl. Ex. 3 at 4, 11. Likewise, Defendant McCambridge pleaded guilty to near-identical conspiracy charges of a similar duration. Compl. at ¶ 18 (citing McCambridge Plea Agreement).

Having alleged predicate acts which constitute federal, criminal offenses, chargeable under Title 18 of the United States Code, and which continued for a period of over two years, Plaintiff has adequately pled closed-ended continuity as required by RICO Section 1962(c). Accordingly, the Court need not consider whether Plaintiff has adequately pleaded the possibility of open-ended continuity. Defendants' motion to dismiss Plaintiff's RICO claims for failure to allege continuity is therefore denied.

22

**B.   Failure to State a Claim for RICO Section 1962(d)**

In conjunction with the foregoing analysis, Plaintiff alleges Defendant violated Section 1962(d) of Title 18 of the United States Code, which provides, "It shall be unlawful for any person to conspire to violate . . . the provisions of subsection . . . (c) of this section."  18 U.S.C. § 1962(d).  "When read in conjunction with the language of § 1962(c), RICO's conspiracy provision § 1962(d) proscribes an agreement 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"  *United States v. Praddy*, 725 F.3d 147, 155 (2d Cir. 2013) (internal editing omitted).

Defendants' sole argument in support of dismissing Plaintiff's Section 1962(d) cause of action is that because Plaintiff's Section 1962(c) claim fails, no cause of action under Section 1962(d) survives.  Defs.' Br. at 21–22 (citing, *inter alia*, *Weizmann Inst. of Science v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (Berman, J.)).  Defendants do not separately argue that Plaintiff has failed to properly allege an agreement or conspiracy.  Thus, having concluded that Plaintiff has adequately stated a claim under Section 1962(c), Defendants' motion to dismiss Plaintiff's RICO Section 1962(d) claim is denied.

## CONCLUSION

Defendants' motion to dismiss Plaintiff's claim of common law fraud is GRANTED as against Defendants Ruocco, ETI, and RecTec but DENIED as against Defendants McCambridge and Tomicic.   Defendants' motion to dismiss Plaintiff's RICO claims is DENIED in its entirety.

**SO ORDERED**

Dated: Brooklyn, New York
        October 7, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

23